```
UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF RHODE ISLAND
- - - - - - - - - - - - - - - - -x

In re:                             :

SANDRA M. BEACH                    :    BK No. 07-10418
          Debtor                        Chapter 13

- - - - - - - - - - - - - - - - -x
```

## OPINION AND ORDER ALLOWING "910" DEFICIENCY CLAIM

APPEARANCES:

    Peter M. Iascone, Esq.
    Attorney for Debtor
    Peter M. Iascone & Associates, Ltd.
    117 Bellevue Avenue
    Newport, Rhode Island 02840

    Matthew J. McGowan, Esq.
    Attorney for Creditor Sovereign Bank
    SALTER McGOWAN SYLVIA & LEONARD
    321 South Main Street
    Providence, Rhode Island 02903

**BEFORE ARTHUR N. VOTOLATO, United States Bankruptcy Judge**

Case 1:07-bk-10418    Doc 104    Filed 10/29/08    Entered 10/29/08 15:25:00    Desc Main
                         Document      Page 2 of 13

BK No. 07-10418

The Debtor objects to Sovereign Bank's deficiency claim for the balance due under an installment contract on the Debtor's automobile which was purchased within 910 days of the bankruptcy filing. In accordance with her amended Chapter 13 plan the Debtor surrendered the vehicle, purportedly in full satisfaction of the car loan. Sovereign, however, asserts a claim for a shortfall in excess of $20,000 remaining after the sale of the surrendered vehicle. In dispute is whether amended 11 U.S.C. § 1325's[1] exclusion of 11 U.S.C. § 506 bars a deficiency claim, where the security is a motor vehicle purchased within 910 days of the filing of the bankruptcy petition.[2] For the reasons discussed below, I conclude that it does not.

### BACKGROUND

In March 2007, the Debtor filed a Chapter 13 petition, and in due course Sovereign Bank filed its proof of (secured) claim, which was subsequently amended into an unsecured claim for the deficiency of $20,293.37. The Debtor objects to Sovereign's unsecured deficiency claim on the ground that surrender of the

---

[1] The amendment has spawned its own mini-vocabulary of terms which will have absolutely no meaning to anyone not directly affected by Section 1325(a).

[2] With the enactment of BAPCPA this same issue has been widely litigated and, predictably, a division of authority has emerged. This case raises the issue for the first time in this Circuit.

Case 1:07-bk-10418    Doc 104    Filed 10/29/08    Entered 10/29/08 15:25:00    Desc Main
                        Document      Page 3 of 13

BK No. 07-10418

vehicle wipes out the entire debt.  Sovereign contends that, even post-BABCPA, the deficiency claim survives bankruptcy.

## DISCUSSION

### Does the "Hanging Paragraph" Operate to Discharge a "910 Creditors'" Deficiency Claim?[3]

11 U.S.C. § 1325(a) sets the requirements for confirmation of a Chapter 13 plan, and § 1325(a)(5)(A)-(C) directs that the "court *shall* confirm a plan if..." a secured claim is dealt with in one of three ways. (Emphasis added.)  "First, the treatment may be as agreed to by the holder of the claim (section 1325(a)(5)(A)); second, the lien may be retained by the creditor and the claim paid in full (section 1325(a)(5)(B)); and third... 'the debtor surrenders the 910 vehicle to the 910 creditor.'" *Wells Fargo Financial Acceptance v. Rodriguez (In re Rodriguez)*, 375 B.R. 535, 543 (B.A.P. 9th Cir. 2007).  In this case, by surrendering "the 910 vehicle" to the bank ("the 910 creditor"), the Debtor communicated her intent to proceed under 11 U.S.C. § 1325(a)(5)(C).

Repeatedly since its enactment, the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA") has

---

[3] In the context of this discussion, the term "910 creditor" has evolved to describe a creditor or a claim that is subject to the provisions of 11 U.S.C. § 1325(a). *See In re Quick*, 371 B.R. 459, 462 n.6 (B.A.P. 10th Cir. 2007).

2

BK No. 07-10418

generated uncertainty and increased litigation in many areas of bankruptcy law.  Here, for example, amended § 1325 now includes an unnumbered and sectionless paragraph that quickly earned notoriety as the *hanging paragraph*, *see In re White,* 352 B.R. 633,638 (Bankr. E.D. La. 2006), resulting in considerable judicial disagreement. *See, e.g., In re Rodriguez*, 375 B.R. at 542 n.6, 548 n.14.  The *hanging paragraph* provides:

> For purposes of paragraph (5), section 506 shall not apply to a claim described in that paragraph if the creditor has a purchase money security interest securing the debt that is the subject of the claim, the debt was incurred within the 910-days preceding the date of the filing of the petition, and the collateral for that debt consists of a motor vehicle....

11 U.S.C. § 1325(a).  The intent of this language was to nullify 11 U.S.C. § 506(a)(1),[4] where the Chapter 13 debtor surrenders a motor vehicle, and a deficiency balance remains after the creditor liquidates its collateral.  Pre-BAPCPA, Section 506 allowed debtors to bifurcate secured claims into secured and unsecured (dischargeable) portions, 11 U.S.C. § 506(a), but the *hanging paragraph* has left the bifurcation of "910 motor vehicle" secured transactions in confusion.  Out of the ensuing litigation, the court in *In re Wright,* astutely, in my opinion,

---

[4] § 506 provides a mechanism for valuing collateral in which the estate has an interest, to determine the amount of an allowed secured claim. *See In re Rodriguez*, 375 B.R. at 544.

3

BK No. 07-10418

noted that while § 506 normally governs secured claims in bankruptcy, "the question at hand is what happens when [§] 506 does not apply." *In re Wright*, 492 F.3d 829, 833 (7th Cir. 2007). I believe the answer to the question deserves an examination of the issue on more than just a simplistic reading of § 506(a), in isolation, of this troublesome amendment.

When bankruptcy courts first began addressing this issue, most of them applied a plain meaning approach, holding that the clear language of the *hanging paragraph* renders Section 506 inapplicable where 910 vehicles are surrendered pursuant to Section 1325(a)(5)(C).  *In re Quick*, 371 B.R. 459, 463 (B.A.P. 10th Cir. 2007) ("the language of the hanging paragraph is neither ambiguous, nor does literal application of its terms lead to a result that is demonstrably at odds with the apparent intentions of its drafters"); *In re Williams,* No. 06-32921-KRH, 2007 WL 2122131, at *5 (Bankr. E.D. Va. July 19, 2007)("the plain meaning of the statute is that surrender of 910 collateral deprives the 910 creditor of the bifurcation provided for in § 506."). *See also In re Pinti*, 363 B.R. 369, 377-78 (Bankr. S.D.N.Y. 2007); *In re Ezell*, 338 B.R. 330, 340-41 (Bankr. E.D. Tenn. 2006).  According to this approach, "the surrender of the 910 collateral in a Chapter 13 plan will satisfy the claim of the

4

BK No. 07-10418

910 creditor in full and will not result in an unsecured deficiency claim." *Williams,* 2007 WL 2122131, at *10.

These rulings certainly represent a plausible (and clearly a popular) approach to the issue. But this Court finds more persuasive an alternative interpretation which has been gaining significant traction. The U.S. Courts of Appeal for the Fourth, Seventh, Eighth, and Tenth Circuits, and the Ninth Circuit BAP have joined a growing number of bankruptcy courts in holding that a residual unsecured claim remains available to the creditor for any deficiency after the sale of a "910 vehicle." *In re Ballard*, 526 F.3d 634 (10th Cir. 2008), *In re Osborn*, 515 F.3d 817 (8th Cir. 2008), *Tidewater Finance Co. v. Kenney (In re Kenney)*, 531 F.3d 312 (4th Cir. 2008), *In re Wright*, 492 F.3d 829 (7th Cir. 2007). In *In re Wright*, the court stated, "it is a mistake to assume . . . that section 506 is the *only* source of authority for a deficiency judgment because the collateral is insufficient," 492 F.3d at 832, and this Court feels that there is a better way to approach this issue, i.e.:

> [T]he right to an unsecured deficiency claim is determined by state law and not by section 506(a), so its [§ 506(a)] inapplicability is meaningless with respect to section 1325(a)(5)(C) surrenders of 910 vehicles.

*In re Rodriguez*, 375 B.R. at 543.

5

BK No. 07-10418

In the instant case, the Debtor surrendered the vehicle pursuant to § 1325(a)(5)(C). This activated the *hanging paragraph*, which in turn purports to trump § 506. Nevertheless, the better reasoned decisions, in my opinion, tell us that § 506 does not apply because, upon surrender, the estate no longer has an interest in the collateral. *See In re Rodriguez*, 375 B.R. at 547 ("section 506 never had any applicability to surrendered collateral"); *see also Slocum v. Americredit Financial Services, Inc.,* No. 4:07-CV-00013-HLM, 2007 WL 1812629 at *4 (N.D. Ga. May 10, 2007) (Section 506 applies only to "an allowed claim of a creditor secured by a lien on property in which the *estate has an interest*.")(emphasis added). Also, "[b]y definition, 'surrender' terminates the estate's interest in the property, thereby rendering §506(a) entirely inapplicable." *In re Particka*, 355 B.R. 616, 626 (Bankr. E.D. Mich. 2006).

The rationale of some courts that until recently constituted the more popular view, i.e., *In re Pinti*, 363 B.R. at 382-83, and *In re Kenney*, Nos. 06-71975-A, 07-70359-A, 2007 WL 1412921 at *10-11 (Bankr. E.D. Va. May 10, 2007), is that the estate does not lose its interest in the surrendered collateral because the estate *might* retain an interest in any surplus proceeds, as well as a right of redemption. (Emphasis added.)  That reasoning is

problematic and unpersuasive, because if the collateral did retain non-exempt value, it would be the trustee's right and obligation, and not the debtor's, to pursue the asset. *See* 11 U.S.C. § 1302(b)(2)(A). In addition, on the facts of this case, that issue is clearly moot because the collateral has been liquidated and we know there are no surplus proceeds – in fact, there is a deficiency balance in excess of $20,000. *See In re Rodriguez*, 375 B.R. at 544.

Adding to the diversity of opinion, the Sixth Circuit Court of Appeals recently expressed yet another view in *AmeriCredit Financial Services, Inc. v. Long (In re Long)*, 519 F.3d 288 (6th Cir. 2008), whose reasoning does not fall within either of the other two lines of cases. That court reached the same result as courts holding that the surrender of a "910 vehicle" does not constitute full satisfaction of the debt, but its rationale differs substantially from that of any other court that has addressed the issue. The court in *Long* rejected the approach used in the *Pinti* and *Kenney* line of cases, because it considered the complete elimination of a deficiency claim to be an irrational result. Instead, the court applied an obscure (to me, at least) common law principle of interpretation known as "the equity of the statute." *Id*. at 297-98. This principle is based

7

BK No. 07-10418

on the idea that statutes express public policy, and when the letter of the statute is contrary to the spirit of the enactment, courts may enforce policy over grammar. The court stated that since the intention of the *hanging paragraph* was to protect secured creditors from cramdown by debtors under § 1325(a)(5)(B), allowing debtors to surrender property in complete satisfaction of a debt defeats the policy or purpose of the amendment.

The court in *Long* also commented that bankruptcy courts should not allow debtors to surrender their undersecured vehicles and thereby wipe out the deficiency, but did not agree that state law was relevant or controlling. The court explained that "Congress simply overlooked providing for what happens in Chapter 13 consumer bankruptcy cases when the debtor surrenders the car to the lender instead of retaining the car and paying off the loan," *id.* at 290, and that "a literal interpretation of the statute would create an unintended and illogical result." *Id*. at 297. Pronouncing that "the primary, underlying purpose of the Bankruptcy Code is to provide a uniform, nationwide system by which claims are handled," *id*. at 296, the court held that this purpose would be defeated by "... apply[ing] widely varying state laws to the tens of thousands of automobiles...dealt with each year in Chapter 13 cases." *Id*. at 297. To cure the problem, the

8

BK No. 07-10418

court ruled that claims subject to the *hanging paragraph* should be governed and adjudicated in accordance with pre-2005 bankruptcy law, i.e., that deficiency claims should be governed as they were before the 2005 amendments.[5] *Id*. at 298.

While the result in *Long* is, hopefully, correct, I would not agree with, or adopt in any way, the reasoning in that opinion, given the routine application of, and the many examples where results in bankruptcy are based upon state substantive law. Regarding the interplay between bankruptcy and the rights and duties created under state law, bankruptcy has been characterized,

> "as a federal procedure for the adjudication of all claims and interests affecting the estate of a single debtor.  In most cases, the property rights of the parties involved in a bankruptcy proceeding are determined in accordance with state law.  In essence, then, the bankruptcy laws are a framework for the efficient adjudication of nonbankruptcy rights. *Absent some overriding federal policy, a bankruptcy court's interpretation of rights originating in state law should mirror a state court's interpretation of such rights as closely as possible.*"

John T. Cross, State Choice of Law Rules in Bankruptcy, 42 Okla. L. Rev. 531, 535 (1989)(Emphasis added).

---

[5]  The court in *Long* did not address how it could use the language of a repealed statute.

9

BK No. 07-10418

As stated by the U.S. Supreme Court, "the scope of a bankruptcy court's equitable power must be understood in the light of the principle of bankruptcy law discussed already, that the validity of a claim is generally a function of underlying substantive law." *Raleigh v. Illinois Department of Revenue*, 530 U.S. 15, 24 (2000). The Supreme Court has explained that, "[p]roperty interests are created and defined by state law. Unless some federal interest requires a different result, there is no reason why such interests should be analyzed differently simply because an interested party is involved in a bankruptcy proceeding." *Butner v. United States*, 440 U.S. 48, 55 (1979).

Upon consideration of the cases representing the various points of view discussed above, I believe that the Ninth Circuit analysis best resolves this issue, 375 B.R. at 543,[6] and will join the body of law represented by:  *In re Sarabia*, 2007 WL 1394388, No. 06-31109-RCM, (Bankr. W.D. Tex. May 9, 2007); *In re Dominguez*, 2007 WL 1394158, No. 06-31167-RCM (Bankr. W.D. Tex. May 11, 2007); *In re Clark,* 363 B.R. 492 (Bankr. N.D. Miss. 2007); *In re Blanco,* 363 B.R. 896 (Bankr. N.D. Ill. 2007); *In re*

---

[6]  *In re Rodriguez,* exactly on point with the case at bench, is adopted and incorporated by reference as a part of this decision.

BK No. 07-10418

*Hoffman,* 359 B.R. 163 (Bankr. E.D. Mich. 2006); *In re Duke*, 345 B.R. 806 (Bankr. W.D. Ky. 2006).

Therefore, on the specific facts of this case, i.e., because, upon surrender, the estate retained no interest in the property, and based upon the general legal principles discussed above, I conclude that the amount and validity of any remaining unsecured claim should be determined according to state law. *See In re Zehrung,* 351 B.R. 675, 678 (W.D. Wis. 2006) ("The creditor's rights being unmodified by [§] 506, it is entitled to its state law right to liquidate the collateral and retain an unsecured claim for the balance due"). In sum, if the sale of the collateral results in a deficiency, the secured creditor may rely on Rhode Island law for the enforcement of any allowed deficiency claim[7] unless specifically excluded under 11 U.S.C. § 502. *See Rodriguez*, 375 B.R. at 544-46. "Nowhere in the hanging paragraph or elsewhere (including section 502) do we find any express or clear basis to disallow [the Creditor's] deficiency claim." *Id*. at 545.

So for the reasons discussed above, I conclude that under Rhode Island law the Debtor's surrender of the vehicle does not *per se* constitute full satisfaction of the Bank's claim.

---

[7] See R.I. Gen. Laws § 6A-9-610 to 6A-9-624.

BK No. 07-10418

Accordingly, the Debtor's objection is **OVERRULED**, and Sovereign Bank's deficiency balance is **ALLOWED** as an unsecured claim.

Dated at Providence, Rhode Island, this 29th day of October, 2008.

                                      Arthur N. Votolato
                                      U.S. Bankruptcy Judge

Entered on docket: 10/29/08